PEOPLE v WILSON

Docket No. 86445. Submitted November 12, 1986, at Detroit. Decided April 20, 1987.

Terry L. Wilson was convicted of assault with intent to rob while armed, two counts of assault with intent to do great bodily harm less than murder, and possession of a firearm during the commission of a felony following a jury trial in the Detroit Recorder's Court, Joseph A. Gillis, J. Defendant was sentenced to concurrent prison terms of from eight to thirty years for the assault with intent to rob conviction and from two and one-half to ten years for each of the assault with intent to do great bodily harm convictions. Defendant also received the mandatory consecutive two-year prison term for felony-firearm. Defendant appealed, raising several issues.

The Court of Appeals *held:*

1. The trial court did not err in allowing the prosecution to impeach defendant on cross-examination with evidence of his prior conviction. MRE 609 does not require the prosecution to notify the defendant of its intention to impeach through use of evidence of the defendant's prior conviction nor does it require the prosecution to initiate the trial court's determination on the admissibility of such evidence. In this case, the prosecutor

REFERENCES

Am Jur 2d, Appeal and Error §§ 880 *et seq.*

Am Jur 2d, Criminal Law §§ 535 *et seq.;* 984 *et seq.*

Am Jur 2d, Evidence § 327.

Am Jur 2d, Trial §§ 604 *et seq.*

Am Jur 2d, Witnesses §§ 569 *et seq.*

Construction and application of Rule 609(a) of the Federal Rules of Evidence permitting impeachment of witness by evidence of prior conviction of crime. 39 ALR Fed 570.

Consideration of, or failure to raise or consider, question on appeal from conviction or on postconviction remedy, as precluding its consideration on subsequent motion to vacate sentence under 28 USC § 2255. 10 ALR Fed 724.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

See also the annotations in the Index to Annotations under Instructions to Jury.

informed defense counsel, prior to defendant's taking the stand, that she intended to impeach defendant with evidence of a prior conviction and asked whether defense counsel would move to suppress. Defense counsel made no response and the prosecutor proceeded as she indicated. Additionally, the trial court complied with MRE 609(a)(2) by weighing the probative value of evidence of the prior conviction with its prejudicial effect before ruling that it was admissible.

2. The trial court properly instructed the jury on the intent required for conviction on the assault charges against defendant. Thus, the trial court's failure to give the specific intent standard jury instruction was not error.

3. Defendant has waived his right to challenge the trial court's minimum sentence calculations under the sentencing guidelines by failing to object to the alleged error prior to sentencing.

4. Defendant's convictions were amply supported by the evidence introduced at trial.

5. Defendant was not denied effective assistance of trial counsel by counsel's failure to call two certain witnesses. The decision to call a witness to testify is a matter of trial strategy. Counsel's failure to call the witnesses in question did not deprive defendant of a substantial defense.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — IMPEACH-
MENT.

The prosecution need not notify a defendant of its intent to impeach the defendant on cross-examination through use of evidence of his prior conviction nor must the prosecution initiate the trial court's determination on the admissibility of such evidence (MRE 609).

2. CRIMINAL LAW — JURY INSTRUCTIONS — SPECIFIC INTENT.

A trial court's failure to give the specific intent instruction when requested is not error where the jury was otherwise properly instructed on the intent required for the crime charged.

3. CRIMINAL LAW — SENTENCING — SENTENCE INFORMATION REPORT
— APPEAL.

Where a sentence information report is made available to a defendant and counsel prior to sentencing, the defendant must challenge the accuracy of the report, if at all, prior to sentencing or, at least, prior to appeal.

4. CRIMINAL LAW — APPEAL — SUFFICIENCY OF EVIDENCE — REASON-
ABLE DOUBT.

The Court of Appeals, in reviewing a claim based on the suffi-

ciency of the evidence, considers all the evidence in a light most favorable to the prosecution and will affirm if a rational trier of fact could find that all the elements of the crime were proven beyond a reasonable doubt.

5. CRIMINAL LAW — ASSISTANCE OF COUNSEL — FAILURE TO CALL WITNESSES.

A defendant is entitled to relief because of his counsel's failure to call a witness only where the failure deprives the defendant of a substantial defense.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Ernest Hornung,* Assistant Prosecuting Attorney, for the people.

*Steven J. Parzen,* for defendant on appeal.

Before: BRONSON, P.J., and BEASLEY and C. L. HORN,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of assault with intent to rob while armed, MCL 750.89; MSA 28.284, two counts of assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to a term of from eight to thirty years in prison for the assault with intent to rob conviction. Sentences of from two and one-half to ten years in prison were imposed on each of the assault with intent to do great bodily harm convictions. These three sentences were to run concurrently. A mandatory two-year consecutive sentence was imposed for the felony-firearm conviction. Defendant now appeals as of right, raising five claims of error.

* Circuit judge, sitting on the Court of Appeals by assignment.

On the evening of July 8, 1984, sixteen-year-old Toie Smith, was hosting a party in the backyard of her parents' home in Detroit. At approximately midnight, a group of seven or eight young people, including Sonya Walton, Ronald Alex and Arlene Bankhead, left the party on foot. They were subsequently accosted by defendant and two other men, one of whom was later identified as Tyrone Vincent. Defendant attempted to force one young man in the group to give up his jacket. Defendant also put a gun in Ronald Alex's face and struck him, sending Alex's glasses flying into the street. Defendant and Vincent then approached Michael Grafton and Alicia Leonard who were returning to the party on a moped. Either defendant or Vincent grabbed the moped and struck Leonard in an attempt to stop the moped. Leonard got off the moped and ran to the house where the party was being held. Michael Grafton testified that Vincent struck him, and that the defendant ordered him off the moped and pointed a gun at him. Defendant fired one shot in the air. Michael Grafton then released his hold on the moped and Vincent got on. A struggle ensued between Michael Grafton and Vincent. Tony Grafton, who had been assisting at the party, heard someone scream that his cousin Michael Grafton was being threatened with a gun. Tony Grafton grabbed a baseball bat and went into the street. Michael Grafton released Vincent when he saw his cousin. The defendant then shot Michael Grafton. Defendant also fired three shots at Tony Grafton, but missed. Defendant, Vincent and the third man (Tony Kiler) then fled in Kiler's car. The defendant was arrested at his home a few hours later.

At trial, defendant related a different scenario of the events on the evening in question. The defendant testified that when he left the party seven or

eight men followed him. A general melee ensued in which bats, bricks, and bottles were thrown. He claimed that shots were fired by a man standing behind him. Then he, Vincent, and Kiler escaped in Kiler's car.

I

Defendant first claims that the trial court erred by allowing the prosecutor to impeach the defendant with evidence of his prior conviction because the prosecution did not move for admission of the evidence before the defendant took the stand. Defendant relies on *People v Ash,* 128 Mich App 265, 268-269; 340 NW2d 646 (1983), in which this Court stated:

> Defendant was entitled to know before he took the stand whether evidence of his prior record would be used for impeachment. *People v Hayes,* 410 Mich 422, 426-427; 301 NW2d 828 (1981). Furthermore, it was the prosecutor's responsibility, not defendant's, to insist on a ruling on the issue before defendant took the stand. *People v Lytal,* 415 Mich 603, 609-610; 329 NW2d 738 (1982).

In the instant case, the prosecutor informed defense counsel, prior to defendant's taking the stand, that she intended to impeach defendant with evidence of the prior conviction and asked whether defense counsel would move to suppress. Defense counsel did not respond. When the prosecutor began to question defendant about his prior conviction on cross-examination, defense counsel immediately objected, citing *Ash*. A hearing was then held outside the presence of the jury. The trial court complied with MRE 609(a)(2) by weighing the probative value of evidence of the prior

conviction with its prejudicial effect and decided to allow the admission of the evidence.

A review of the facts in *Ash* reveals that defense counsel was unaware of the prosecutor's intent to use the defendant's prior conviction to impeach until after the defendant had taken the stand, while in the instant case, defense counsel knew that the prosecutor intended to impeach defendant with his prior convictions; yet, defense counsel failed to move to suppress. Under these circumstances, we decline to follow the rule set forth in *Ash*.

We disagree with the blanket holding in *Ash, supra,* pp 268-269, that the defendant is entitled to know before taking the stand whether evidence of a prior conviction will be used for impeachment. Such a holding would add a procedural requirement not contained in MRE 609 itself. The authority cited by the *Ash* Court in support of this holding is *People v Lytal,* 415 Mich 603, 609-610; 329 NW2d 738 (1982). However, we conclude that the *Ash* Court's reliance on *Lytal* is misplaced.

In *Lytal,* the trial judge reserved his ruling on the prosecutor's motion to admit evidence of a prior conviction until after the defendant testified. The trial court decided that his ruling on the motion was dependent upon the defendant's testimony. Evidence of the defendant's prior conviction was ultimately admitted. In reviewing the case, our Supreme Court held that the defendant was entitled to know, before he took the stand, whether evidence of his prior conviction could be used for impeachment purposes. *Lytal, supra,* p 609, citing *People v Hayes,* 410 Mich 422; 301 NW2d 828 (1981). We note that although this language can be found in *Hayes,* it should be read in context with the holding in that case (where our Supreme Court held that it was an impermissible

abdication of judicial discretion when the trial judge insisted that the defendant not impeach the prosecutor's witnesses with evidence of prior convictions as a quid pro quo for the prosecutor's promise not to impeach defendant's witnesses with evidence of prior convictions). The *Lytal* Court further held that defendant had not waived his objection to the use of evidence of the prior conviction for impeachment by not insisting on a ruling prior to defendant's taking the stand because the trial judge had specifically indicated he would not rule on the admissibility of the prior conviction until he had heard defendant's testimony. *Lytal, supra,* pp 609-610. The Court concluded that defense counsel's insistence on a ruling would have antagonized the trial judge. The basic holding of *Lytal* on this issue was that the trial court may not reserve its ruling on admissibility of evidence of prior convictions depending on defendant's testimony. Nowhere in *Lytal* is the principle relied on in *Ash* espoused.

In addition, nothing in MRE 609 indicates who must initiate the trial court's determination on the admissibility of prior convictions for impeachment. We decline to adopt the *Ash* Court's placement of the burden upon the prosecutor in all instances. The defendant here was afforded procedural due process. No error requiring reversal was committed.

II

Next, defendant argues that the trial court committed error by failing to instruct the jury on specific intent. We disagree. In felonious assault cases the jury must be instructed that the defendant must have possessed either an intent to injure the victim or an intent to put the victim in

reasonable fear or apprehension of immediate battery. *People v Joeseype Johnson,* 407 Mich 196; 284 NW2d 718 (1979). In *People v Yarborough,* 131 Mich App 579, 581; 345 NW2d 650 (1983), where defendant had been convicted of felonious assault, this Court held that failure to give an instruction on specific intent was not an error requiring reversal when the jury had been instructed on the requisite intent. "Even where requested the refusal to give the specific intent instruction has been found to be harmless where the jury was properly instructed on the requisite intent." *Yarborough, supra,* p 581, citing *People v American Medical Centers of Michigan, Ltd,* 118 Mich App 135, 153-154; 324 NW2d 782 (1982).

In the instant case, similar to *Yarborough,* the trial judge, in instructing on an assault with intent to do great bodily harm, instructed the jury that defendant must have intended to do great bodily harm. Further, the instructions given on felonious assault included both prongs required in *Joeseype Johnson, supra.* We find that the instructions given adequately informed the jury of the requisite specific intent. The trial court's refusal to give the specific intent instruction was not error requiring reversal.

III

Defendant also argues that his case should be remanded for resentencing because the trial judge inaccurately calculated the minimum sentence range under the sentencing guidelines by assigning too high a score to certain sentencing variables. We do not agree that defendant is entitled to resentencing.

In the instant case, although defendant and

defense counsel were afforded an opportunity to review the sentence information report (SIR), neither defendant nor defense counsel objected to the scoring of the variables or to the minimum sentence range as calculated under the guidelines. We conclude that defendant has waived his right to challenge the scoring in the report. When the SIR is available to defendant and defense counsel prior to sentencing, defendant must challenge the accuracy of the report prior to the imposition of sentence or, at least, prior to appeal. *People v Jones,* 147 Mich App 292, 294; 382 NW2d 772 (1985), lv den 425 Mich 866 (1986). See also *People v Kennie,* 147 Mich App 222; 383 NW2d 169 (1985), and *People v Jannifer Williams,* 147 Mich App 1; 382 NW2d 191 (1985).

IV

In his fourth claim of error, defendant makes a general challenge to the sufficiency of the evidence presented at trial. In reviewing a claim based upon the sufficiency of the evidence, this Court must consider all the evidence presented in a light most favorable to the prosecution. A verdict should be affirmed on appeal if a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Swinford,* 150 Mich App 507, 511-512; 389 NW2d 462 (1986); *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den sub nom *Michigan v Hampton,* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980).

Extensive discussion of this issue is not warranted. We have reviewed the overwhelming proofs presented at trial, and conclude that defendant's convictions were amply supported by the evidence.

V

Finally, defendant claims that he was denied effective assistance of counsel at trial. In *People v Garcia*, 398 Mich 250, 264-266; 247 NW2d 547 (1976), our Supreme Court set forth the following standard to be used in reviewing ineffective assistance of counsel claims: Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law. Even if this standard is met, defendant may also have been denied a fair trial if his attorney made a mistake so serious that "but for" that mistake, defendant would have had a reasonably likely chance of acquittal.

In the instant case, defendant claims that defense counsel failed to investigate and call to testify two witnesses who could have corroborated defendant's story. In support of his claim of ineffective assistance of counsel, defendant offers the affidavit of the two possible witnesses, Phillip Smith and Tyrone Vincent.

The decision of whether to call a witness to testify is a matter of trial strategy. *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). Defendant is entitled to relief only in those instances where counsel's failure to call a witness deprives defendant of a substantial defense. *Id.* In the instant case, we find that defendant was not deprived of a substantial defense by counsel's failure to call the two witnesses in question. The affidavit of Phillip Smith, disc jockey at the party, neither contradicts nor specifically supports defendant's case. Further, while the affidavit of Tyrone Vincent indicates that his testimony would likely have corroborated that of the defendant, Vincent's credibility was in question as he was heavily implicated in the incident through the testimony of

prosecution witnesses. Under these circumstances, we find that defendant was not denied effective assistance of counsel by defense counsel's failure to call the two witnesses in question.

Affirmed.

BRONSON, P.J., did not participate.